# IN THE MATTER OF THE ADOPTION OF A CHILD BY S AND HIS WIFE.

Essex County Court
Probate Division

Decided August 11, 1959.

*Mr. Joseph D. Lintott,* attorney for the adopting parents S.

*Mr. Gerard L. Del Tufo,* attorney for the natural parents P.

MASUCCI, J. C. C.   S and his wife seek to adopt P, an infant of about 18 months.   The adopting parents obtained the written consent of the natural parents of the infant in due form pursuant to statutory provision.   A hearing was held upon formal complaint and answer at which time all of the parties in interest and their witnesses were fully heard.

The natural parents who now object to the adoption did not deny that they signed the required written consent.   Nor do either of them contend that the consent was not voluntary or given without sufficient intelligent consideration.   However, they now seek to withdraw their consent and contest the adoption.

The statute is silent on the withdrawal of parental consent.   In the only case in New Jersey based on a New York case, it has been held that consent may be withdrawn before judicial action.   *In re Schult's Adoption,* 14 *N. J.*

*Super.* 587 (*Cty. Ct.* 1951). There still remains some serious question as to the right to withdraw in this jurisdiction.

Although it has been held that parental consent is essential and of great importance and that the natural parents have the natural and primary right to custody, this right may be transferred by consent or by abandonment, pursuant to statutory provisions and cases cited. *Stawicky v. Stawicky,* 12 *N. J. Super.* 72 (*App. Div.* 1951).

While the natural right of the parents should be carefully considered, such rights should be given less weight when voluntarily surrendered or abandoned. However, such considerations are secondary to the primary and controlling issue of the welfare and best interests of the infant involved. *In re Adoption by Jacques,* 48 *N. J. Super.* 523 (*Ch. Div.* 1958).

It is natural that the parental instinct for loving affection and care commonly exists as the incentive for parental and filial duty and generally best provides for the welfare of the infant. It is also the instinct of childhood to attach itself and cling to those performing the parental duty.

In the instant case the evidence is abundant and, in fact, not seriously denied that the infant did not receive the loving care and attention naturally expected from parents of a first-born child of very tender months. He was neglected and suffered rashes due to lack of even a minimum amount of reasonable care. He apparently was not shown the care, love and attention he was entitled to by the father because of lack of interest, incompetency or just plain laziness. The mother's affection was illicitly and brazenly concentrated on her paramour, leaving none for her tender child. She had no interest in caring for him and desired to rid herself of him to have more time for her adulterous objects and purposes. Her acts and conduct throughout, even after her so-called change of mind, indicate a callous indifference to the rights and feelings of those who should be dear to her. The parents have shown

a most complete lack of any natural parental love and devotion and are entitled to no consideration whatsoever.

Nor can it be said that the child has so completely attached itself to the natural parents as to disturb the child's interest from an emotional point of view. The child is too young to know and attach himself to his parents and, if he knew, there would be still less reason for so doing.

The natural parents by their conduct and consent have impaired their natural right to possession and custody of their child. They have shown themselves unfit morally and otherwise to retain such responsibility and care.

On the other hand the adopting parents have proved beyond doubt their good character and fine home surroundings and their ability, willingness and desire to give the child all the best of care and attention for his proper welfare and best interest and development.

The adoption will be granted.